IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTOINE DE-MARR WASHINGTON, | * | |
| | * | |
| Petitioner, | | Criminal No. RDB-14-0389 |
| | * | |
| v. | | Civil Action No. RDB-16-0429 |
| | * | |
| UNITED STATES OF AMERICA, | | |
| | * | |
| Respondent. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

The *pro se* Petitioner Antoine De-Marr Washington ("Petitioner" or "Washington") pled guilty before this Court to Attempted Possession with the Intent to Distribute Five Kilograms or More of Cocaine, in violation of 21 U.S.C. § 846.[1]  J., p. 1, ECF No. 250. Subsequently, this Court sentenced Petitioner to 144 months imprisonment, followed by five years of supervised release. *Id.* at 2-3.  Currently pending before this Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 367).  Having reviewed the parties' submissions, this Court finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons discussed herein, Petitioner's Motion to Vacate (ECF No. 367) is DENIED.

---

[1] As discussed *infra*, Petitioner was one of nine Defendants charged via a ten-count Indictment in this case (ECF No. 70).  The Indictment charged all nine Defendants with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Heroin, in violation of 21 U.S.C. § 846 (Count 1) and charged each Defendant with one additional count of Attempted Possession with Intent to Distribute Heroin and/or Cocaine, in violation of 21 U.S.C. § 846 (Counts 2-10). Pursuant to a Plea Agreement with the Government, Petitioner pled guilty to Attempted Possession with Intent to Distribute (Count 2), and the Government dismissed the Conspiracy charge (Count 1) as to Petitioner.

BACKGROUND

Pursuant to a Plea Agreement with the Government, Petitioner Antoine De-Marr Washington ("Petitioner" or "Washington") has "stipulate[d] and agree[d] that if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt:"

On August 6, 2014, the Federal Bureau of Investigation's ("FBI") Safe Streets Squad arrested an individual [referred to as "CD" in the Plea Agreement, but subsequently identified as Michael Barrett ("Barrett")] as he attempted to take possession of multiple kilograms of cocaine. Plea Agreement, Attachment A, p. 8, ECF No. 154. Subsequently, Barrett agreed to cooperate with the FBI and placed a series of consensual calls to several of his "customers." *Id.* On August 11, 2014, "[a]s a result of" Barrett's calls, Washington and another individual [subsequently identified as Vincent Cooper ("Cooper")] travelled to a meeting location in Baltimore, "where they intended to purchase cocaine." *Id.* Washington and the other individual "had with them more than $223,000 to be used toward the purchase of 5 kilograms of cocaine." *Id.* Both Washington and the other individual were arrested. *Id.*

Several additional individuals responded to Barrett's calls and were subsequently arrested when they travelled to meet him. In addition to Washington and Cooper, law enforcement arrested Jermaine Cannady ("Cannady"), Guy Bordes Agnant, Jr. ("Agnant"), Cornell Dion Brown, Jr. ("Brown"), Dominic William Parker ("Parker"), Ronald Timothy Sampson ("Sampson"), Donte Eugene Taylor ("Taylor"), and Tavon Hopkins ("Hopkins") (collectively "Defendants"). On August 21, 2014, a Grand Jury returned a ten-count Indictment (ECF No. 70) charging all nine Defendants with Conspiracy to Distribute and

2

Possess with Intent to Distribute Cocaine and Heroin "in or about November 2013 through in or about August 2014," in violation of 21 U.S.C. § 846 (Count 1), and charging each Defendant with one additional count of Attempted Possession with Intent to Distribute Heroin and/or Cocaine, in violation of 21 U.S.C. § 846 (Counts 2-10).

Pursuant to Plea Agreements with the Government, Defendants Washington, Agnant, Cooper, Taylor, and Hopkins each pled guilty to one of the charged offenses, in exchange for the Government dropping the other charge. Specifically, Washington, Agnant, Taylor, and Hopkins pled guilty to Attempted Possession with Intent to Distribute Cocaine[2] (Counts 2, 4, 9 & 10 respectively), and the Government dismissed Count 1, the Conspiracy charge, as to those Defendants. *See* Washington J., p. 1, ECF No. 250; Agnant J., p. 1, ECF No. 255; Taylor J., p. 1, ECF No. 252; Hopkins J., p. 1, ECF No. 231. Cooper pled guilty to Conspiracy (Count 1), and the Government dismissed the Attempted Possession charge against Cooper (Count 7). *See* Cooper J., p. 1, ECF No. 220. All five Defendants were sentenced by this Court. This Court sentenced Washington to 144 months imprisonment, followed by five years of supervised release. Washington J., p. 2-3, ECF No. 250.

The remaining four Defendants, Cannady, Brown, Parker, and Sampson, went to trial in March of 2015. Following a nine-day jury trial in this Court, Defendants Cannady, Brown, Parker, and Sampson were found guilty on all counts, including Conspiracy to Distribute and Possess with Intent to Distribute Cocaine (Count 1) *and* Attempted Possession with Intent to Distribute Cocaine (Counts 3, 5, 6 & 8 respectively). Verdict

---

[2] Count 2 of the Indictment charged Washington with Attempted Possession with Intent to Distribute *Cocaine and Heroin*. However, Washington pled guilty only to Attempted Possession with Intent to Distribute *Cocaine*. All references to heroin were excluded from the Plea Agreement.

Sheet, ECF No. 202 [SEALED].  Michael Barrett testified as a key witness for the Government at trial.  All Defendants were subsequently sentenced by this Court.

In January of 2016, counsel for the Government submitted to Defense counsel a single handwritten sheet of paper (ECF No. 373-1) that they "had not seen previously," although it "had been seized by the FBI [prior to trial] during the execution of a search warrant at Michael Barrett's residence."  Letter, p. 1, ECF No. 373-1.  The Government spoke to Barrett about the handwritten sheet, and he "advised that the document reflected notations as to payments received for portions of drugs sold and any money shortages regarding those payments." *Id.*

Subsequently, Defendants Cannady, Brown, Parker, and Sampson filed a Joint Second Motion for New Trial (ECF No. 373) on the grounds that the Government's failure to disclose the handwritten sheet *prior to trial* violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 154 (1972).  To prove a *Brady* violation, a defendant must show that the undisclosed evidence was (1) favorable to the defendant; (2) material; and (3) that the prosecution had the material and failed to disclose it. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972), accord, *United States v. Horton*, 693 F.3d 463, 470 (4th Cir. 2012); *United States v. King*, 628 F.3d 693, 701-02 (4th Cir. 2011).

On December 13, 2016, this Court conducted a hearing on the Defendants' Joint Second Motion for New Trial.  Following several hours of argument by both Defense counsel and Government counsel, this Court ultimately granted Defendants' Cannady, Brown, Parker, and Sampson's Joint Second Motion for New Trial (ECF No. 373) and vacated its prior Judgments against those Defendants, pursuant to Rule 33 of the Federal

Rules of Criminal Procedure.  *See* Order, ECF No. 403.  For the reasons stated on the record at the conclusion of the December 13, 2016 hearing, this Court held that a *Brady* violation had occurred, but only with respect to Count 1, the Conspiracy charge against all Defendants.  Specifically, this Court found that the Government had the handwritten sheet (ECF No. 373-1) in its possession prior to trial, yet failed to disclose it to Defendants.  This Court found that the handwritten sheet was both "favorable" and "material," but *only with respect to* the charged Conspiracy to Distribute and Possess with Intent to Distribute (Count 1).  This Court concluded that the handwritten sheet was fundamental to the Defense's ability to challenge Barrett's testimony as to the existence of the charged conspiracy.  This Court *did not find* that the handwritten sheet was both "favorable" and "material" with respect to Attempted Possession with Intent to Distribute Cocaine (Counts 3, 5, 6 & 8).

At the hearing on the Joint Second Motion for New Trial (ECF No. 373) filed by the Defendants Cannady, Brown, Parker, and Sampson, this Court noted that there had been previous motions to sever Count 1, the Conspiracy charge, from Counts 3, 5, 6 & 8, in which those four Defendants were each individually charged with one count of Attempted Possession with Intent to Distribute Heroin and/or Cocaine.  In light of the *Brady* violation as to the Conspiracy charge, this Court concluded that it was infeasible to order a new trial only with respect to the charged Conspiracy, but not also with respect to the individual charges of Attempted Possession with Intent to Distribute.  Accordingly, this Court vacated its prior Judgments in their entirety and ordered a new trial as to all counts.  Issues of severance as to Defendants and/or individual counts may be addressed prior to the new trial for the Defendants Cannady, Brown, Parker, and Sampson.  This Court's ruling in no way

affects Washington's plea of guilty to Attempted Possession with Intent to Distribute multiple kilograms of Cocaine.

In his pending Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 367), Washington argues that his court-appointed counsel rendered ineffective assistance, in violation of his rights under the Sixth Amendment to the United States Constitution.  *See* Mot., ECF No. 367; Reply, ECF No. 387.  Additionally, although he did not proceed to trial in this case and was not a party to Defendants' Joint Second Motion for New Trial (ECF No. 373), Washington argues that the recently disclosed handwritten sheet constitutes "new evidence . . . so exculpatory in nature that [he] should now be allowed to withdraw his guilty plea and go to trial."  Reply, p. 11, ECF No. 387. Petitioner further contends that he is entitled to bail or release on bond pending this Court's ruling on the pending Motion to Vacate.  Mot., p. 7, ECF No. 367.

## STANDARD OF REVIEW

*Pro se* filings are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(citation omitted). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) the court lacked "jurisdiction to impose the sentence, . . . [(3)] the sentence was in excess of the maximum authorized by law, or [(4) the sentence] is otherwise subject to a collateral attack."  28 U.S.C. § 2255.  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental

defect which inherently results in a complete miscarriage of justice.' " *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)).

## DISCUSSION

In order to establish ineffective assistance of counsel, Petitioner must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). First, Petitioner must show that his counsel's performance was deficient such that it fell below an "objective standard of reasonableness." *Id.* at 688. In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that an attorney's actions fall within the "wide range of reasonable professional assistance." *Id.* at 689. Second, Petitioner must show that his counsel's performance was prejudicial, meaning the defendant was "depriv[ed] . . . of a fair trial." *Id.* at 687. To demonstrate such prejudice, Petitioner must show there was a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding[s] would have been different." *Id.* at 694. Both of these prongs must be satisfied for the Petitioner to obtain the relief he is seeking. *Id.* at 687.

In the plea bargaining context, "claims of ineffective assistance of counsel . . . are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012) (citing *Hill*, 474 U.S. at 57). However, the "prejudice prong of the test is slightly modified" in that Petitioner must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988) (internal quotation marks omitted); *see also* id. (quoting *Hill*, 474 U.S. at 59).

7

**I.      Petitioner's Guilty Plea**

Petitioner first argues "that his decision to enter a plea of guilty in this case, as opposed to seeking an order dismissing the indictment, was the product of ineffective assistance of counsel." Mot., p. 3, ECF No. 367. Specifically, he objects that his court-appointed counsel should have filed a motion to dismiss the Indictment on the grounds that the Government "lied to the Grand Jury" by "inform[ing] them that Petitioner had agreed and attempted to distribute and possess with the intent to distribute *heroin*." *Id.* (emphasis added). Petitioner posits that he never once "discussed heroin during the conversations he had with [Michael Barrett]." *Id.* Petitioner contends that "[h]ad counsel . . . apprised [him] that such a motion was an option, [he] would have elected to proceed with a motion to dismiss the [I]ndictment as opposed to accepting the Government's unfavorable plea offer." *Id.* at 4. For these reasons, he contends that his guilty plea was "unknowing, involuntary, and a wholly unintelligent choice." *Id.* at 2.

A valid guilty plea requires an "affirmative showing [by the defendant] that [the plea] was intelligent and voluntary." *Boykin v. Alabama,* 395 U.S. 238, 242 (1969). This affirmative showing cannot come from a "silent record," but rather must involve "a thorough, on-the-record inquiry." *Savino v. Murray,* 82 F.3d 593, 603 (4th Cir. 1996) (referencing *Boykin,* 395 U.S. 243-44). The United States Court of Appeals for the Fourth Circuit has long recognized that "in-court representation[s] from the defendant are treated as conclusive with regard to the validity of the plea and may not be controverted later." *Id.* at 603. "Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule

8

11 colloquy are always 'palpably incredible' and 'patently frivolous or false.' " *United States v. Lemaster,* 403 F.3d 216, 221 (4th Cir. 2005).

In this case, Petitioner is incapable of demonstrating ineffective assistance because he explicitly indicated on the record at his Rearraignment proceedings that he was satisfied with his counsel's representation and that he was voluntarily pleading guilty to Attempted Possession with Intent to Distribute Cocaine (Count 2). The record reads as follows:

> THE COURT: Mr. Washington, do you understand that you're now under oath?
>
> DEFENDANT WASHINGTON: Yes.
>
> THE COURT: Are you fully satisfied with Mr. Purpura and his representation . . . are you satisfied with the advice he's given you?
>
> DEFENDANT WASHINGTON: Yes.
> THE COURT: Are you pleading guilty on your own freely because you are, in fact, guilty?
>
> DEFENDANT WASHINGTON: Yes.
>
> THE COURT: Are you satisfied, then, that you understand all the possible consequences of your plea of guilty?
>
> DEFENDANT WASHINGTON: Yes.

Rearraignment Tr., p. 5, 7, 10, and 16, ECF No. 374.

Additionally, the record indicates that counsel worked diligently to ensure Petitioner understood the implications of accepting the plea deal. Petitioner's counsel stated, "I can tell the Court that I met with Mr. Washington over a dozen times . . . We reviewed any legal issues which may be raised [in this case]." *Id.* at 17. "The Petitioner's colloquy . . . more than satisfies the concerns articulated in *Boykin*" regarding the importance of ensuring the voluntary nature of a guilty plea. *Savino,* 82 F.3d at 603. In the *Lemaster* case, the Fourth

9

Circuit instructed district judges to "dismiss any § 2255 motion that necessarily relies on allegations that contradict the [Petitioner's] sworn statements." *Lemaster,* 403 F.3d at 221.

Furthermore, Petitioner's contention that the Government "lied to the Grand Jury" by informing them that Petitioner had attempted to possess *heroin* is without merit. As discussed *supra*, the Indictment in this case *charged* Defendants with Attempted Possession with Intent to Distribute *Cocaine and Heroin.* However, Washington pled guilty only to Attempted Possession with Intent to Distribute *Cocaine.* References to heroin were excluded from the Plea Agreement. The fact that cocaine and heroin were both *charged* does not entitle Petitioner to post-judgment relief, nor was it grounds for dismissal of the Indictment. The United States Court of Appeals for the Fourth Circuit has explained that in instances where the government is charging an individual for violating a statute that is worded in the disjunctive ("or"), "federal pleading requires the government to charge in the conjunctive ["and"]." *United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001) (internal citation omitted); *see also United States v. Perry*, 560 F.3d 246, 256 (4th Cir. 2009). "The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to *any one of the acts charged.*" *Turner v. United States*, 396 U.S. 398, 420 (1970). As discussed *supra*, Petitioner has entered a valid guilty plea with respect to Attempted Possession with Intent to Distribute *Cocaine* (Count 2) and has stipulated to the facts the Government would be able to prove at trial with respect to that offense. For these reasons, Petitioner's first argument fails.[3]

---

[3] Currently pending before this Court is Petitioner's Motion for a Copy of the Grand Jury Minutes at Government's Expense[ ] (ECF No. 380), in which he requests a copy of the Grand Jury Minutes "to assist [him] in pointing out the specific perjury claims . . . he alleges." Mot., p. 2, ECF No. 380. For the reasons

## II. Petitioner's Arrest & Evidence Seized Incident to Petitioner's Arrest

Additionally, Petitioner objects that his court-appointed counsel "fail[ed] to move to suppress evidence seized incident to [his] arrest and the search of his car" on the night of his arrest. Mot., p. 6, ECF No. 367. Petitioner contends that "[b]oth the search of the vehicle and the preceding arrest were without reasonable suspicion or probable cause." *Id.*

Contrary to Petitioner's assertions, Mr. Purpura did in fact file a Motion to Suppress (ECF No. 107) on the precise grounds that Petitioner describes. Subsequent to Petitioner's guilty plea, this Court denied that Motion. *See* Order, ECF No. 176. Additionally, as discussed *supra*, Petitioner stated on the record before this Court that he was fully satisfied with Mr. Purpura's representation. He subsequently entered a guilty plea and affirmed on the record that he had committed the offense charged in Court 2 of the Indictment. Accordingly, his second argument for post-judgment relief fails.

## III. The Single Handwritten Sheet

In his Reply brief, Petitioner further contends that the Government's recent disclosure of " 'handwritten documents' . . . which had not previously been disclosed to the defense at the [D]efendants' trial . . ." renders his guilty plea "unknowing and involuntary." Reply, p. 12-13, ECF No. 387. Petitioner contends that had he been aware of this evidence prior to entering his guilty plea, "[t]his could have been another major piece of exculpatory evidence which would have encouraged [him] to go to trial." *Id.* at 13.

As discussed *supra*, this Court has conducted a hearing on Defendants Cannady,

---

stated *supra*, Petitioner's allegations are without merit. Accordingly, Petitioner's Motion for a Copy of the Grand Jury Minutes at Government's Expense[ ] (ECF No. 380) is DENIED.

Brown, Parker, and Sampson's Joint Second Motion for New Trial (ECF No. 373) on the grounds that the Government's failure to disclose this handwritten sheet *prior to trial* violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 154 (1972). Following that hearing, this Court held that a *Brady* violation had occurred, but only with respect to Count 1, the Conspiracy charge against all Defendants. This Court *did not find* that the handwritten sheet was both "favorable" and "material" with respect to Attempted Possession with Intent to Distribute Cocaine (Counts 3, 5, 6 & 8).

Because Petitioner pled guilty *only to* Attempted Possession with Intent to Distribute Cocaine (Count 2), he cannot demonstrate that he was prejudiced in any way by the Government's non-disclosure of the handwritten sheet. At the December 13, 2016 hearing, this Court found that the handwritten letter was only "favorable" and "material" to the extent that it would have aided the Defense in challenging the existence of the charged *conspiracy*. As discussed *supra*, Petitioner has stipulated to the facts the Government would prove with respect to the *Attempted Possession* charge. Petitioner has stipulated that he and Cooper travelled to a meeting location in Baltimore, "where they intended to purchase cocaine," and that they "had with them more than $223,000 to be used toward the purchase of 5 kilograms of cocaine." Plea Agreement, Attachment A, p. 8, ECF No. 154. Accordingly, Petitioner is not entitled to post-judgment relief in light of the recently disclosed handwritten sheet.

### IV. Petitioner's Request for Release on Bond

Petitioner requests that this Court "release [him] on bond pending the disposition of the [pending Motion to Vacate] on the merits." Mot., p. 7, ECF No. 367. "Before a

prisoner may be released on bail pending a collateral attack on his conviction, he must show substantial constitutional claims on which he has a high probability of success, and exceptional circumstances making a grant of bail necessary for the habeas remedy to be effective." *United States v. Eliely*, 276 F. App'x 270 (4th Cir. 2008).  As discussed *supra*, all of Petitioner's arguments are without merit.  He has failed to "show substantial constitutional claims." Accordingly, his argument for release on bond is without merit.  For these reasons, his pending Motion to Vacate (ECF No. 367) is DENIED.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 367) is DENIED, and Petitioner's Motion for a Copy of the Grand Jury Minutes at Government's Expense[ ] (ECF No. 380) is also DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated:          December 27, 2016

                                                                              /s/
                                                                     Richard D. Bennett
                                                                     United States District Judge